**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **MARGO B.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | No. 22 C 555 |
| v. ) | |
| ) | Magistrate Judge Finnegan |
| **MARTIN J. O'MALLEY, Acting** ) | |
| **Commissioner of Social Security,**[1] ) | |
| ) | |
| **Defendant.** ) | |

## ORDER

Plaintiff Margo B. seeks to overturn the final decision of the Acting Commissioner of Social Security ("Commissioner") denying her application for a period of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and Plaintiff filed a brief explaining why the Commissioner's decision should be reversed or the case remanded. The Commissioner responded with a competing motion for summary judgment in support of affirming the ALJ's decision. After careful review of the record and the parties' respective arguments, the Court finds that the case must be remanded for further proceedings.

## BACKGROUND

Plaintiff protectively applied for DIB on January 22, 2018, alleging disability since July 17, 2017 due to "severe nerve damage throughout [her] body." (R. 13, 179). Born

---

[1] Martin J. O'Malley became the Acting Commissioner of Social Security on December 20, 2023. He is automatically substituted as the named defendant pursuant to FED. R. CIV. P. 25(d).

in 1971, Plaintiff was 46 years old as of the alleged disability onset date, making her a younger person (under age 50). (R. 21, 150); 20 C.F.R. § 404.1563(c). Plaintiff has at least a tenth-grade education. (R. 37, 180). She lives in a house with her husband and stepdaughter, who moved in to help Plaintiff with showering, getting fed, and moving around the house, since Plaintiff's husband works out of town Monday through Thursday. (R. 36-37, 39, 175, 216). From 2005 to 2017, Plaintiff worked as an office manager for her mother's business, which involved handling payroll and accounts payable and receivable. (R. 37-38, 180). She stopped working in July 2017 due to her conditions and has not engaged in any substantial gainful activity since then. (R. 15, 35, 179).

The Social Security Administration denied Plaintiff's DIB application initially on June 18, 2018 and again upon reconsideration on February 7, 2019. (R. 13, 55-77, 82-93). Plaintiff filed a timely request for a hearing and appeared before administrative law judge Joyce Frost-Wolf (the "ALJ") on December 4, 2020.[2] (R. 13, 29-31, 95-105). The ALJ heard testimony from Plaintiff, who was represented by counsel, and from vocational expert Kathleen Doehla (the "VE"). (R. 13, 29-54). On January 27, 2021, the ALJ found that Plaintiff has severe impairments in the form of plantar fasciitis, fibromyalgia, and degenerative disc disease in the thoracic spine, but they do not alone or in combination meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 15-16).

After reviewing the medical and testimonial evidence, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), except she can: occasionally climb ramps and stairs but never

---

[2] The hearing was held telephonically due to the COVID-19 pandemic. (R. 13, 31, 112-47).

2

ladders, ropes, or scaffolds; occasionally stoop, crouch, kneel, and crawl; and frequently reach, handle, and finger bilaterally. (R. 16). Additionally, the ALJ determined that Plaintiff can occasionally work around heavy machinery but not at unprotected heights. (*Id.*). The ALJ accepted the VE's testimony that: (1) a person with Plaintiff's background and this RFC could perform Plaintiff's past relevant work as an office manager (as generally performed but not as actually performed); and (2) Plaintiff could perform other jobs that exist in significant numbers in the national economy. (R. 21-22, 49-51). As a result, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from the July 17, 2017 alleged disability onset date through the ALJ's January 27, 2021 decision. (R. 22-23). The Appeals Council denied Plaintiff's request for review. (R. 1-6). The ALJ's decision stands as the final decision of the Commissioner and is reviewable by this Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

In support of her request for reversal or remand, Plaintiff contends that the ALJ: (1) failed to properly analyze her fibromyalgia and chronic pain syndrome; (2) erred in finding that none of her mental impairments were medically determinable and disregarding their effect on Plaintiff's functioning; (3) improperly rejected the opinion of her treating primary care physician Jay Long, M.D.; (4) failed to support the finding that she could sustain her past relevant work as an office manager; and (5) erred at step five by listing other jobs within the national economy that Plaintiff can perform, which differ from those identified by the VE. As discussed below, the Court finds that remand is necessary because the ALJ erred in assessing the alleged severity of Plaintiff's fibromyalgia pain and other symptoms and failed to explain how the RFC assessment

3

accommodates Plaintiff's fibromyalgia (and other severe impairments). On remand, the ALJ should also rectify the undisputed error at step five of her decision.

## DISCUSSION

### A. Standard of Review

A claimant is disabled within the meaning of the Social Security Act if she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which involves analyzing: "(1) whether the claimant is currently employed; (2) whether [the claimant] has a severe impairment or a combination of impairments that is severe; (3) whether [the claimant's] impairments meet or equal any impairments listed as conclusively disabling; (4) whether [the claimant] can perform . . . past work; and (5) whether [the claimant] is capable of performing any work in the national economy." *Gedatus v. Saul*, 994 F.3d 893, 898 (7th Cir. 2021) (citing (citing 20 C.F.R. § 404.1520(a)-(g)). If the claimant meets her burden of proof at steps one through four, the burden shifts to the Commissioner at step five. *Id*.

In reviewing an ALJ's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (quoting *Gedatus*, 994 F.3d at 900). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted).

4

An ALJ is not required to "address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell*, 97 F.4th at 1053. But ALJs must "provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id.* at 1054 (internal quotations and citation omitted) (in "shorthand terms," an ALJ must build a "logical bridge from the evidence to [her] conclusion").

**B. Analysis**

    **1. Fibromyalgia**

Plaintiff argues that the case must be reversed or remanded because the ALJ demonstrated "a fundamental misunderstanding of fibromyalgia and chronic pain syndrome." (Doc. 13, at 6, 8-11). Specifically, Plaintiff contends that the ALJ failed to comply with SSR 12-2p and erred in determining that her fibromyalgia is not as severe as alleged because the objective evidence of record "cannot explain" Plaintiff's allegations of disabling symptoms and limitations. (*Id.*; R. 17, 20). The Court agrees with Plaintiff that the ALJ's assessment of Plaintiff's alleged fibromyalgia pain and other symptoms was flawed and requires remand.

SSR 12-2p "provides guidance on how we develop evidence to establish that a person has a medically determinable impairment (MDI) of fibromyalgia." SSR 12-2p, 2012 WL 3104869, at *1. The Ruling sets out two diagnostic criteria: "[t]he first identifies the factors required for determining that fibromyalgia constitutes a medically-determinable impairment [and t]he second describes the criteria that should be considered to measure the severity of a claimant's symptoms and to assess the

appropriate RFC." *Molly K. v. Saul*, No. 18 C 3415, 2019 WL 3857885, at *5 (N.D. Ill. Aug. 16, 2019) (citing SSR 12-2p, 2012 WL 3104869, at *2-6). The latter closely matches SSR 16-3p, "which controls a symptom evaluation, but [the factors] also contain issues specific to fibromyalgia such as the widespread nature of pain, the fluctuating nature of its symptoms, and the need to be alert to complaints such as unrefreshing sleep." *Id.*

At step two, the ALJ determined not only that Plaintiff's fibromyalgia was a medically determinable impairment but that it was a severe impairment. (R. 15).[3] The ALJ then concluded at step three that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of [a listed impairment]." (R. 16). More specifically, the ALJ stated that she had "considered the claimant's foot impairments and her chronic pain complaints against the requirements of section 1.02 of the Listing of Impairments and Social Security Ruling 12-2p (fibromyalgia) but f[ound] that the available objective medical evidence does not establish the required level of severity." (*Id.*). Plaintiff appears to take issue with this assessment, stating,

> The ALJ's misunderstanding of fibromyalgia became apparent as early as Step 3, when she simply offered the perfunctory conclusion that she considered chronic pain complaints pursuant to SSR 12-2p, and found that the available objective medical evidence does not establish the required level of severity. Had she actually considered Plaintiff's fibromyalgia pursuant to SSR 12-2p later in the analysis, the error might be harmless, but she continued to reveal a lack of understanding of the symptoms and

---

[3] Plaintiff appears to take issue with the ALJ's treatment of her chronic pain syndrome at step two of the analysis but has waived any such argument. Plaintiff states in a footnote, "Inexplicably, though [the ALJ] acknowledged the related diagnosis of chronic pain syndrome as well, she did not include that in the list of impairments at Step 2, either severe or non-severe." (Doc. 13, at 8 n.1). The Commissioner responds that "[t]he ALJ effectively combined fibromyalgia and chronic pain syndrome into a single impairment [and t]he differences between the two are negligible." (Doc. 15, at 2 n.1). To the extent that Plaintiff contends the ALJ erred by addressing her fibromyalgia but not her chronic pain syndrome at step two, she has waived any such argument by failing to adequately develop it. *Krell v. Saul*, 931 F.3d 582, 586 n.1 (7th Cir. 2019) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.") (citation omitted); *Horr v. Berryhill*, 743 F. App'x 16, 20 (7th Cir. 2018) (same).

>effects of those impairments, much less the prescribed analytical framework.

(Doc. 13, at 8) (internal citation omitted). But it is unclear how Plaintiff believes the ALJ erred at step three. As the Commissioner notes, Plaintiff has not offered any explanation to show that she satisfies the criteria for a listed impairment (Doc. 15, at 5), and simply objecting that the ALJ's step-three analysis was "perfunctory" is insufficient to support a remand. Plaintiff has thus waived any argument in this regard. *Gina V. v. Kijakazi*, No. 20 C 4009, 2022 WL 1457801, at *6 n.4 (N.D. Ill. May 9, 2022) (finding the claimant waived her step-three argument, which was "perfunctory and undeveloped," since she did not claim that her impairments met or equaled a listing level severity); *see also Krell*, 931 F.3d at 586 n.1 ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.") (citation omitted); *Horr*, 743 F. App'x at 20 (same).

Regardless, the crux of Plaintiff's challenge to the ALJ's fibromyalgia assessment is based on the ALJ's conclusion that the objective evidence of record cannot explain the alleged severity of her pain and limitations. According to SSR 12-2p, "If objective medical evidence does not substantiate [a claimant's] statements about the intensity, persistence, and functionally limiting effects of symptoms, [the ALJ must] consider all of the evidence in the case record, including the person's daily activities; medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms." 2012 WL 3104869, at *5. An ALJ's assessment of a claimant's subjective complaints will be reversed only if "patently wrong." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

7

As the ALJ acknowledged, Plaintiff testified that she is "always in pain" and "always tired." (R. 17, 44). Plaintiff explained that she has "bad days" and "worse days." (R. 17, 39). On the latter days, she needs her stepdaughter or husband to assist her with showering. (*Id.*). Plaintiff stated that she can't stand long enough to prepare her own food or stand in line to pick up her medication. (R. 17, 40). She estimated that she can only stand for five to ten minutes at a time, and she has to shift positions after five to ten minutes of sitting. (R. 40). Plaintiff wakes up in pain repeatedly throughout the night. (R. 17, 44). During the day, she watches television but can't stay in one position for very long because her body cramps up. (R. 39, 41-42). She tries to lie down with a heating pad but no position is comfortable. (R. 17, 42, 44-45). Filling the bathtub with hot water helps her make it through showers, but the relief is only temporary. (R. 42). Plaintiff has tried multiple treatment modalities to relieve her pain, including physical therapy and yoga, steroid injections, and an intensive pain rehabilitation program at the Mayo Clinic, but she has been unable to find sustained relief. (R. 17, 19-20, 41-43).

The ALJ concluded that while Plaintiff's fibromyalgia and other severe impairments "could reasonably be expected to cause [her] alleged symptoms [] her statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported by the preponderance of the evidence of record." (R. 20). More specifically, the ALJ found that "the available objective evidence of record cannot explain the alleged severity of the claimant's pain and her functional limitations (inability to bathe and feed herself on 'worse days')." (*Id.*).

In reaching these conclusions, the ALJ relied largely on the purported lack of support in the objective evidence of record. Although the ALJ acknowledged that physical

8

examinations have revealed "tenderness to palpation, antalgic gait, and, in 2017, positive Tinel signs in the tarsal areas of both feet" (*id.*), the ALJ found that the following evidence undermined the alleged severity of Plaintiff's pain and limitations: diagnostic studies of the back, feet, and lower extremities, including EMG/NCS, were negative for "significant abnormalities"; the fact that surgery was never recommended; and the absence of neurological deficits, "despite extensive evaluations by specialists, including Mayo Clinic neurology." (*Id.*).

But the Seventh Circuit has repeatedly cautioned that "[t]he extent of fibromyalgia pain cannot be measured with objective tests aside from a trigger-point assessment." *Gerstner v. Berryhill*, 879 F.3d 257, 264 (7th Cir. 2018); *see also Maria G. v. O'Malley*, No. 21 C 1779, 2024 WL 2370309, at *3 (N.D. Ill. May 23, 2024) ("Courts in this district repeatedly have stated that fibromyalgia pain cannot be adequately assessed through the kind of objective medical evidence that the ALJ relied on throughout his decision."); *Bonita L. v. O'Malley*, No. 23 C 13902, 2024 WL 3090222, at *3 (N.D. Ill. June 21, 2024) (finding "faulty" the ALJ's reasoning that the claimant's fibromyalgia was not as severe as alleged because EMG and MRI studies showed only "modest findings," since "courts have made clear that EMG and MRI testing are not relevant to the diagnosis or severity of fibromyalgia") (internal quotations and citation omitted); *Brown v. Berryhill*, No. 18 C 64, 2019 WL 499410, at *4 (N.D. Ind. Feb. 7, 2019) ("The ALJ has not explained how . . . results from neurological examinations are inconsistent with significant limitations due to fibromyalgia."). For this reason, "[c]ourts have repeatedly rejected the position that objective tests are required to find that a claimant's fibromyalgia claims are credible." *Akel v. Colvin*, No. 14 C 6355, 2016 WL 7232559, at *3 (N.D. Ill. Jan. 8, 2016); *see also Sharon*

*B. v. Kijakazi*, No. 20 C 6910, 2023 WL 5096747, at *4 (N.D. Ill. Aug. 8, 2023) ("objective testing is not a reliable standard by which an ALJ can go about assessing the credibility of a claimant's fibromyalgia claims") (citation omitted). The ALJ seems to have disregarded these directives. Nor did she offer any explanation for (or point to any medical opinion that supported) the significance she attached to the objective findings she cited.

As the Commissioner correctly notes, the ALJ did not rely solely on the absence of objective medical evidence to discount the alleged severity of Plaintiff's symptoms. (Doc. 15, at 5); *see Akin v. Berryhill*, 887 F.3d 314, 318 (7th Cir. 2018) ("An ALJ may not discredit a claimant's testimony about her pain and limitations solely because there is no objective medical evidence supporting it.") (internal quotations and citation omitted); *Michelle M. v. Saul*, No. 18 C 50003, 2019 WL 6609425, at *6 (N.D. Ill. Dec. 5, 2019) (explaining that "even if the ALJ's evaluation of the objective evidence was valid, the ALJ was required to have at least another rationale to support a credibility finding"). But the other reasons provided by the ALJ do not pass muster.

While it was proper for the ALJ to consider the nature and frequency of Plaintiff's attempts to obtain medical treatment in assessing the alleged severity of her fibromyalgia symptoms, SSR 12-2p, 2012 WL 3104869, at *5, the ALJ failed to explain how this factor supported her credibility finding. The ALJ stated that Plaintiff "often complained that tried conservative treatment -- physical therapy, steroid injections, and non-narcotic pain medication -- was too painful or too unacceptable in terms of side effects." (R. 20). But, as the ALJ recognized earlier in her opinion, Plaintiff: participated in multiple physical therapy sessions for bilateral foot pain between December 2017 and January 2018 with

no reported improvement; returned to physical therapy for thoracic and lumbar spine pain in May 2018; and attempted rubber band therapy at home when she was unable to resume physical therapy in or around April 2020 due to the COVID-19 pandemic. (R. 18-19, 342-52, 393-402, 429, 575).

While it is true that Plaintiff ultimately self-discharged her physical therapy sessions in June 2020, the record reflects that she made multiple attempts to pursue physical therapy (and may have faced financial barriers to pursuing it further at times, which the ALJ did not address). (R. 19, 204-06, 210, 213, 278, 320, 332, 362, 392-431, 606, 672-74). Similarly, despite complaining that the pain from a cortisone injection in her right heel in April 2017 was too much to continue, Plaintiff tried a series of lumbar epidural steroid injections prescribed by her pain management specialist in 2018. (R. 17, 19, 43, 185, 271-72, 280, 433, 439, 442-43, 452, 606). Plaintiff reported no improvement or sustained relief from those injections. (R. 17, 19, 35, 43, 280, 433, 446, 469); *Aleithia Ann F. v. Saul*, No. 17 C 9158, 2019 WL 2644214, at *6 (N.D. Ill. June 27, 2019) (noting that the ineffectiveness of the claimant's fibromyalgia medications, acupuncture, and water therapy, as well as her referral to a pain specialist, may have supported her alleged symptoms). Indeed, the ALJ's rationale for rejecting the state agency physicians' determination that Plaintiff's impairments were either non-severe or mildly disabling such that she could perform a full range of medium work was the fact that she "sought evaluation with multiple specialists (neurology, podiatry, rheumatology, and pain management) and that she has tried physical therapy, steroid injections, and even an intensive pain rehabilitation program through the Mayo clinic." (R. 20). The ALJ did not

11

explain why she found that Plaintiff's attempts to pursue these and other treatments were inconsistent with her allegations of fibromyalgia pain and other symptoms.

Additionally, the ALJ discredited Plaintiff's statements regarding the severity of her pain and other symptoms based on her use of prescribed narcotics. To begin, the ALJ stated that, instead of pursuing cognitive behavioral therapy counseling as recommended, Plaintiff "was most interested in narcotics as a way of managing her symptoms." (*Id.*). In support, the ALJ noted that Plaintiff had recently completed the intensive pain rehabilitation program at the Mayo Clinic, "during which she was strongly encouraged to discontinue opioids" but "did not follow through." (*Id.*). To the extent that the ALJ intended to suggest that Plaintiff's pain complaints were not entirely credible because she exhibited drug-seeking behavior, the ALJ did not identify any evidence showing that Plaintiff obtained, or tried to obtain, pain medication by deceiving or manipulating a medical professional. *Larry D. v. Kijakazi*, No. 20 C 2518, 2023 WL 4157179, at *5 (N.D. Ill. June 23, 2023) ("The Seventh Circuit and others define drug-seeking behavior as obtaining or attempting to obtain pain medication by deceiving or manipulating a medical professional.").

More importantly, the ALJ did not explain why Plaintiff's use of prescribed medication undermines her credibility, nor does she seem to have considered the "possibility that a person in severe pain would request more or different drugs." *Id*. (citation omitted); *Hurlbut v. Colvin*, No. 15 C 50270, 2017 WL 497774, at *4 (N.D. Ill. Feb. 7, 2017) (claimant's repeated attempts to obtain Norco before a refill was due did not unambiguously show drug-seeking behavior and could also mean he was in severe pain). Indeed, courts have found that the prescription of narcotic pain relievers such as

those prescribed to Plaintiff (*e.g.*, Norco, Percocet, and Hydrocodone) may "further bolster[] the credibility of [the claimant's] complaints." *Alison M. v. Berryhill*, No. 18 C 1248, 2019 WL 2269978, at *5 (N.D. Ill. May 28, 2019) (citing *Gerstner*, 879 F.3d at 264); *Westlund v. Saul*, No. 19 C 655, 2021 WL 733824, at *4 (N.D. Ind. Feb. 25, 2021) (quoting SSR 16-3p) (noting that "[p]ersistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications . . . may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent").[4]

Compounding matters is the fact that the ALJ never explained how her RFC assessment accounts for Plaintiff's fibromyalgia (or either of the other impairments she found to be severe). It is true, as the Commissioner notes, that the ALJ considered Plaintiff's fibromyalgia in her summary of the medical evidence (Doc. 15, at 2-3; R. 17, 19-20), but the ALJ never provided any explanation connecting the dots between the evidence and her conclusion that Plaintiff can perform light work with certain limitations. All that the ALJ said was that the RFC assessment "sufficiently accommodates the claimant's subjective complaints, and any additional functional limitations are not supported by the record at this time." (R. 20).

---

[4] As to the other factors that should have been considered in evaluating Plaintiff's statements, the ALJ summarized Plaintiff's testimony regarding her daily activities and concluded that Plaintiff "described fairly limited daily activities, but this degree of limitation cannot be fully explained by the available evidence in the rest of the record." (R. 17). This single sentence fails to adequately explain how Plaintiff's daily activities were consistent or inconsistent with her alleged pain and other symptoms. Nor did the ALJ give any indication as to whether she considered the statements offered by Plaintiff's husband and niece regarding Plaintiff's symptoms and limitations in his Third-Party Function Report and her letter. (R. 215, 225-32); SSR 12-2p, 2012 WL 3104869, at *5; *Aleithia Ann F.*, 2019 WL 2644214, at *7 (finding ALJ erred in evaluating the claimant's subjective symptom allegations of fibromyalgia pain where the ALJ did not take into consideration the physical limitations described by the claimant's sister in a third-party function report).

The ALJ apparently did not rely on the opinion evidence of record in formulating the RFC, as she found that Plaintiff was more limited than the agency reviewing physicians assessed but was unpersuaded by the only other opinions of record, offered by Dr. Long and Plaintiff's physical therapist. (R. 20-21). While the ALJ was not required to adopt any physician's opinion in crafting the RFC, she was required to explain the basis for it. *Anna-Marie L. v. Kijakazi*, 21 C 50354, 2022 WL 4610120, at *2 (N.D. Ill. Sept. 30, 2022) ("[T]he responsibility for the RFC assessment belongs to the ALJ, not a physician, [but] an ALJ cannot construct [her] own RFC finding without a proper medical ground and must explain how [she] has reached [her] conclusions.") (citation omitted); *see also Maria G.*, 2024 WL 2370309, at *2 (remanding where the ALJ needed to "provide a more fulsome explanation [as to] how the limitations included in the RFC can accommodate Claimant's fibromyalgia pain and her physical limitations," since "[w]ithout that logical bridge explaining how and why the facts in the record lead the ALJ to his conclusion, the Court cannot assess the legal sufficiency of the ALJ's analysis"). This the ALJ did not do.

In sum, despite the deference owed to the ALJ's subjective symptom determination, the Court concludes that the ALJ failed to adequately explain her reasoning for discounting the severity of Plaintiff's alleged fibromyalgia pain and other symptoms, and how she accounted for Plaintiff's fibromyalgia (and other severe impairments) in the RFC assessment. The case must be remanded for further explication of these issues.

    **2.    Remaining Arguments**

Having determined that remand is appropriate, the Court need not address Plaintiff's remaining arguments. However, the ALJ should take the opportunity on remand

14

to review all medical and testimonial evidence as appropriate. The ALJ should also ensure that any available jobs identified at step five of the analysis correspond with those identified by the VE. (Doc. 15, at 1, 10) (recognizing that "the ALJ made a headscratching step five error when she listed three jobs different from those testified to by the vocational expert").

## CONCLUSION

For reasons stated above, Plaintiff's request to reverse or remand the case is granted, and Defendant's Motion for Summary Judgment [14] is denied. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and this case is remanded to the Social Security Administration for further proceedings consistent with this opinion.

ENTER:

Dated: September 13, 2024

SHEILA FINNEGAN
United States Magistrate Judge